

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

> Opinion No. O-2763
> Re: In a case in which a corporation
> that operates "meat products"
> stores owns a majority of the
> stock in a corporation that
> operates a "sporting goods" store,
> do all of said stores constitute
> one chain under the Texas "Chain Store
> Tax Statute"?

We have received your letter in which you ask whether, under the Texas "Chain Store Tax Statute", the "sporting goods" store owned and operated by Wilson Sporting Goods Company is a part of the same chain as the "meat products" stores owned and operated by Wilson & Co., Inc., or is separate from said chain of "meat products" stores.

The facts you give show that Wilson & Co., Inc., is a corporation engaged in the business of preparing, packing and selling "meat products" and that it owns and operates several establishments in which said products are sold and which are therefore "stores" within the meaning of the "Chain Store Tax Statute". Wilson Sporting Goods Co. is another corporation, and it is engaged in selling athletic equipment and other "sporting goods", and it owns and operates in Texas one "store", as that term is defined in the "Chain Store Tax Statute", in which only "sporting goods" are sold. Fifty-five per cent (55%) of the stock of Wilson Sporting Goods Co. is owned by Wilson & Co., Inc. There is no other connection or relationship between the two corporations.

Your question is whether all of the stores of said two corporations constitute one single chain or the stores of one corporation are a separate chain from those of the other corporation.

The Texas "Chain Store Tax Statute" was passed as House Bill No. 18, 44th Legislature, 1st Called Session, Acts 1935; and it is codified as Article 1111d of Vernon's Annotated Penal Code. It provides that every person, corporation, etc., shall pay a license fee on every store they operate, and a schedule of license fees is prescribed whereby the greater the number of stores operated the larger is the amount per store that must be paid. For example, if only one store is operated the license fee is one dollar ($1.00), but if six stores are operated by the same person the license fees total one hundred and thirty-two dollars ($132.00), and if twelve stores are operated by the same person the license fees total six hundred and thirty-two dollars ($632.00). Section 6 of the Act provides:

"The provisions of this Act shall be construed to apply to every person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management."

Section 7 of the Act provides:

"The term 'store' as used in this Act shall be construed to mean and include any store or stores of any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold, at retail or wholesale."

We believe your question is controlled by the case of H. E. Butt Grocery Co. v. Sheppard, 137 S. W. (2d) 823 (writ of error refused), in which the Court of Civil Appeals at Austin held that in a case in which two corporations each owned and operated grocery stores and the same person owned a majority of the stock in each of said corporations all of the stores owned and operated by both corporations constituted one single chain by virtue of said stock ownership. The court said:

"Sec. 6 was manifestly intended to prevent large chains of stores, which receive the benefits flowing from such system (considered and enumerated in part by the U. S. Supreme Court in State Board of Tax Com'rs. v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536, and in Hurt v. Cooper, 130 Tex. 433, 110 S. W. (2d) 896, sustaining the validity of the Act as constituting a reasonable classification), from circumventing the tax burdens imposed under the Act, by organizing separate corporations to operate them, the capital stock of which, or a majority of it, being owned by a parent corporation or holding company, or by an individual or association of individuals. Thus through a common management or control over a number of individual units or corporations the clear purpose of the law would be defeated. . . .

". . . The ownership by Butt of 83% of the stock in one corporation, and of 75% of the stock in the other, gave him such unified control of both corporations, through such stock ownership, as to bring the stores owned and controlled by such separate corporations under the provisions of the Act; and required that they be treated as one chain for tax purposes."

There are no words in the statute which indicate that the Legislature intended that Sections 6 and 7, as construed by the H. E. Butt Grocery Co. case, should not apply just as strongly to stores selling different types of merchandise as they do in a case where all of the stores sell the same kind of merchandise. In the H. E. Butt Grocery Co. case the stores of both of the corporations (of which the majority stock of each was owned by the same person) sold groceries, but we think the rule would be the same if the stores of one corporation sold groceries and the stores of the other corporation sold an entirely different type of goods.

In the case of State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, the Supreme Court of the United States upheld the constitutionality of the Indiana chain store tax law, which is almost identical with the Texas "Chain Store Tax Statute." The Court upheld the statute wherein it levied a larger tax per store on large chains than it did per store on smaller chains or on persons owning only one store, because there is a difference in such stores. The Court said:

". . . there are many points of difference between chain stores and independently owned units. These consist in quantity buying, which involves the application of the mass process to distribution, comparable to the mass method used in production; buying for cash and obtaining the advantage of a cash discount; skill in buying, so as not to overbuy, and at the same time keep the stores stocked with products suitable in size, style and quality for the neighborhood customers who patronize them; warehousing of goods and distributing from a single warehouse to numerous stores; abundant supply of capital, whereby advantage may be taken of opportunities for establishment of new units; a pricing and sales policy different from that of the individual store, involving slightly lower prices; a greater turn-over, and constant analysis of the turn-over to ascertain relative profits on varying items; unified, and therefore cheaper and better advertising for the entire chain in a given locality; standard forms of display for the promotion of sales; superior management and method; concentration of management in the special lines of goods handled by the chain; special accounting methods; standardization of store management, sales policies and goods sold." (underscoring ours)

We recognize that such "differences" in respect to stores in large chains do not exist to as great an extent where the stores in the chain do not all sell the same kind of merchandise as exists in a case where all of the stores sell identically the same kind of commodities, but some of said "differences" exist. We believe enough of said "differences" exist to sustain the constitutionality of the Act when it is construed so as to place "sporting goods" stores and "meat products" stores in the same chain by virtue of said stores being controlled by the same "majority stock ownership". Even though the stores sell different kinds of merchandise, the following "differences" exist: "buying for cash and obtaining the advantage of a cash discount"; "abundant supply of capital"; and "superior management and method".

In the case of Unemployment Compensation Commission v. City Ice & Coal Co., 216 N. C. 6, 3 S. W. (2d) 290, the Supreme Court of North Carolina upheld a provision in the North Carolina Unemployment Compensation Act similar to Sections 6 and 7 in the Texas "Chain Store Tax Statute", and held three corporations

(of which the majority stock of each was owned by the same group of persons) to constitute the same unit within the meaning and purposes of the Act; and in that case two of the three corporations engaged exclusively in the buying and selling of ice and coal, and the other corporation handled only dairy products.

Our answer to your questions is that all of the stores of said two corporations, towit, said "sporting goods" store and said "meat products" stores, constitute one single chain under the Texas "Chain Store Tax Statute."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Cecil C. Rotsch*

Cecil C. Rotsch
Assistant

CCR:AMM

APPROVEDNOV 13, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED.
CONFERENCE



APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN

O.K.