STATE ex rel. STATE BOARD OF EQUALIZATION et al. Appellants *v.* GLACIER PARK CO., Respondents.

No. 8603

Submitted October 23, 1945. Decided December 11, 1945.

164 Pac. (2d) 166

·206

Mr. R. V. Bottomly, Atty. Gen., and Mr. I. W. Choate and Mr. H. O. Vralsted, both of Helena, for appellants.

Messrs. Weir, Clift & Bennett and Mr. Enor K. Matson, all of Helena, for respondent.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This suit was filed against Glacier Park Company by the State of Montana, on the relation of the State Board of Equalization, for a declaratory judgment to determine the applicability of the Store License Tax Law, Chapter 163, Laws of 1939, with reference to seven stores maintained by defendant in Glacier National Park, and for a judgment for $382 as the unpaid license fees upon them for the years 1941 and 1942. The cause was submitted to the court upon an agreed statement of facts and plaintiff has appealed from a judgment rendered thereon in favor of defendant.

The agreed statement of facts shows that during the years in question the defendant maintained eight stores within the boundaries of the State of Montana, seven of which were within Glacier National Park, the eighth being at Glacier Park Station outside of the Park; that defendant has paid the license and filing fees upon the latter store for each year but has refused to procure any license or pay any fee for its seven stores in Glacier National Park because of its belief that such requirement is beyond the jurisdiction of the State of Montana; that Glacier National Park was created by act of Congress on May 11, 1910, 36 Stat. 354, Title 16 U. S. C. A. sec. 161; that by Chapter 33, Laws of 1911, now section 22, R. C. M. 1935, the State of Montana ceded to the United States exclusive jurisdiction over the territory then or thereafter to be included in Glacier National Park, with certain reservations including "the right to tax persons and corporations, their franchises, and property, on the lands included in said park"; that on August 22, 1914, the Congress of the United States enacted a statute, 38 Stat. 699, Title 16 U. S. C. A. sec. 163, assuming sole and exclusive jurisdiction subject to those reservations; that the said seven stores in the Park are operated by defendant under a written contract between it and the Assistant Secretary of the Interior, acting on behalf of the United States, a copy of which contract is annexed to the agreed statement of facts; that Chapter 163, Laws of 1939, requires

that all persons and corporations owning, operating, establishing, or maintaining any store or stores in the state of Montana shall secure a license from the State Board of Equalization and shall pay a filing fee of fifty cents for each application together with an annual license fee for each store operated, established or maintained in the following amounts: Upon one store, $5; upon the second store, $7.50; upon the third store, $15; upon the fourth store, $22.50; upon the fifth store, $30; upon each store in excess of five, $37.50; that if the chapter is applicable to the defendant's seven stores within Glacier National Park, plaintiff is entitled to recover as such fees thereon $191 for each year, or a total of $382 with interest thereon at the rate of 6% per annum from January 15, 1942, to date of judgment; and that if it is not applicable thereto, defendant is entitled to a judgment for its costs.

Thus the sole question is whether the provisions of Chapter 163, with reference to the seven stores in question, are within the state's reserved power of taxation under section 22, Revised Codes, supra.

Section 1 of Article XII of the Constitution of Montana provides in part: "The legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state." There can be no doubt that the lands included within Glacier National Park are also included within and constitute part of the State of Montana. With regard to a similar situation, the United States Supreme Court said in Collins v. Yosemite Park & Curry Co., 304 U. S. 518, 58 S. Ct. 1009, 1017, 82 L. Ed. 1502: "The Act is restricted to sales 'in this State,' but that term embraces all territory within the geographical limits of the State."

The entire Glacier National Park area is included within Montana by virtue of the state boundaries described in section 1 of the Organic Act of the Territory of Montana, recognized by section 1 of the Enabling Act, and again described by section 1 of Article I of the State Constitution. This is true even of military reservations; for section 1 of Article II of the State

Constitution granted exclusive jurisdiction to the United States over those reservations only "so long as said places remain military reservations," which can only mean that the land remains part of the state and that the cession was of the specified jurisdiction over the land in question, but not of the land itself nor of complete sovereignty over it. Section 20, Revised Codes 1935, provides: "The sovereignty and jurisdiction of this state extends to all places within its boundaries, as established by the constitution, excepting such places as are under the exclusive jurisdiction of the United States; but the extent of such jurisdiction over places that have been or may be ceded to, purchased, or condemned by the United States, is qualified by the terms of such cession, or the laws under which such purchase or condemnation has been or may be made."

Certainly there are no words in section 22 which can be interpreted as excluding the Glacier National Park lands from the state or terminating the state's sovereignty or jurisdiction over them, and any such intent is negatived by the reservation of certain powers. The same is true of all other acts by which the assembly of Montana has ceded jurisdiction to the United States. See sections 21, 23, 24, 25, 25.1, 25.2, and 26.1, Revised Codes. The lands included within Glacier Park continue to constitute part of the State of Montana and are subject to the provisions of Chapter 163 in so far as those provisions do not exceed the powers reserved to the State by section 22, supra.

It is well settled that a license may be required either for taxation purposes or to defray the expense of regulation and that the legislature has the power to impose license taxes for revenue purposes under section 1 of Article XII, Constitution of Montana. Johnson v. City of Great Falls, 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974.

In its brief defendant states affirmatively that in numerous respects the provisions of this Act are the same as those of its predecessor, Chapter 155, Laws of 1933, sections 2420.1 to 2420.11, Revised Codes 1935, which this court held, in Standard

Oil Co. v. State Board of Equalization, 110 Mont. 5, 99 Pac. (2d) 229, constituted a valid license tax law, on the authority of State Board of Tax Commissioners of Indiana v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536; Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. Ed. 929, 85 A. L. R. 699, and other authorities.

The power of taxation reserved to the State by section 22, Revised Codes, is not so limited as to exclude license taxes and there is no reason why such license tax cannot, in general, be imposed. Nor is there any reason why it may not extend to the portions of the State over which the State's jurisdiction is limited to matters of taxation as distinguished from matters of regulation unless the license tax provision is so related to or involved with regulatory provisions as not to be susceptible of separate or independent application. However, if the license tax were imposed to defray the expense of regulation or were so related to regulatory provisions that it could have no separate existence, it must, to that extent, be inapplicable in areas over which the state has relinquished regulatory jurisdiction.

Collins v. Yosemite Park & Curry Co., supra, was an appeal from a decree of the United States District Court permanently enjoining state officials from enforcing the California Alcoholic Beverage Control Act against the appellee Company with respect to sales of intoxicating liquors in Yosemite National Park, over the lands of which the state cession of jurisdiction was substantially the same as in the present case. That Act, as its name implies, was adopted for the purpose of control of alcoholic beverages within the state. As originally enacted in 1935, it consisted of 70 sections. In 1937 one section was repealed, some 44 were amended, and some 66 new sections were added. As in the case of the short Montana statute here involved, the usual separability clause was included in the Act.

Section 5 of the California Act provided for 24 different varieties of licenses covering all phases of the alcoholic beverage business, and sections 23 and 24 included excise taxes upon the sale of such beverages in California. The other sections, num-

bering some 132, regulated every phase of the importation and sale of alcoholic beverages in the state, contained provisions defining those to whom licenses might or might not be issued, regulating their businesses, requiring bonds and reports to be filed, and providing for inspection of books and records. There is no room for doubt that except for the two sections imposing excise taxes, which were clearly for revenue purposes, the Act, including the imposition of license fees, was principally for regulatory purposes and that the license provisions were so connected with the regulatory provisions as not to be separable from them.

The United States Supreme Court said:

"The jurisdiction over the Yosemite National Park is exclusively in the United States except as reserved to California, e. g., right to tax, by the Act of April 15, 1919 * * *. As there is no reservation of the right to control the sale or use of alcoholic beverages, such regulatory provisions as are found in the Act under consideration are unenforceable in the Park.

"Interpretation of Reservations. The lower court, in interpreting the language of the Acts of grant and acceptance was of the opinion that the saving of 'the right to tax persons and corporations, their franchises and property' was not sufficiently broad to justify the collection of fees for licenses under section 5 and sales under sections 23 and 24 of the Alcoholic Beverage Control act. * * *

(a) Licenses. As the State of California has in the area of the Yosemite National Park only the jurisdiction saved under the cession and acceptance acts of 1919 and 1920, it does not have the power to regulate the liquor traffic in the Park. Except as to this reserved jurisdiction, California 'put that area beyond the field of operation of her laws.' Standard Oil Co. v. People of State of California, 291 U. S. 242, 54 S. Ct. 381, 382, 78 L. Ed. 775. While the State has, under its reservation, the right to use means to force collection of the taxes saved, it seems clear that the licenses required by section 5 go beyond aids to the collection of taxes and are truly regulatory in character. *This is not*

*a case where provisions requiring a license may be treated as
separable from regulations applicable to those licensed.* Cf. Electric Bond & Share Co. v. Securities & Exchange Comm., 303
U. S. 419, 58 S. Ct. 678, 82 L. Ed. 936 [115 A. L. R. 105]. Here
the regulatory provisions appear in the form of conditions to
be satisfied before a license may be granted. The provisions requiring licenses for the importation or sale of alcoholic beverages
in the Park are invalid.

"(b) Excise Taxes. A different conclusion obtains, however, with respect to the excise tax provisions of the Alcoholic
Beverage Control Act, laying a tax, at a specified rate per unit
sold, on beer, wine, and distilled spirits sold 'in this State.' * * *

"Section 23 provides that an excise tax is imposed upon beer
and wine sold 'in this State by (an) * * * importer.' Reference
to provisions of the Act defining the terms used in this section
makes it plain that although appellee Company does not import
beverages into California within the meaning of the Twenty-First Amendment * * *, it is an importer for purposes of the
Act, and, as such, is subject to the tax. The Act is restricted
to sales 'in this State,' but that term embraces all territory
within the geographical limits of the State. There is nothing in
the Act restricting this taxing provision to sales made by or to
persons licensed under the Act. Section 23 clearly applies to
beer and wine sold by appellee Company in the Park, and it
applies to such sales regardless of the applicability vel non of
the regulatory or licensing provisions of the Act.

"Section 24 * * * imposes an excise tax upon all distilled
spirits 'sold in this State by rectifiers or wholesalers.' * * *
*These provisions, like sec. 23, are independent of any licensing
or regulatory provisions of the Act, and may be enforced independently, as a purely tax or revenue measure. * * *

"As in our judgment, as heretofore pointed out, *the tax provisions are enforceable and the regulatory provisions unenforceable,* it is necessary to reverse the decree and remand the cause
to the District Court."

In other words, the court held that taxing provisions of the

Act which were "independent of any licensing or regulatory provisions of the Act, and may be enforced independently" were enforceable as a tax or revenue measure but that the license provisions could not "be treated as separable from regulations applicable to those licensed," so as to be enforced separately. It follows that if, like the excise taxes, the license taxes had been independent of regulatory provisions, so as to be susceptible of separate application, those taxes also would have been held enforceable in Yosemite Park.

In Chapter 163 there are no "regulatory provisions." Furthermore, there are no "regulations applicable to those licensed" except provisions not regulatory in nature but merely an aid to the collection of license taxes, including the requirements for the display of the license (section 3), for annual renewal applications (section 4), and for penalties for violations of the Act (section 11). We find no such provisions as in the California Act, either limiting those to whom licenses may be issued or regulating the conduct of their businesses. Licenses are required to be issued to all who apply and pay the license fees therefor. Not being dependent upon any "regulatory provisions" or any "regulations applicable to those licensed," the taxes imposed by Chapter 163 are valid taxes and applicable, as such, with regard to stores maintained in Glacier National Park.

Defendant contends that the purpose of Chapter 163 is "regulation by taxation" in that it is "inherently regulatory and not primarily a revenue measure." The argument is that it tends to discourage the operation of multiple stores by the increased license fees charged. For several reasons the argument is not valid. In the first place, as shown above, the question is not whether an incidental effect or purpose of a license tax may be regulatory, but whether the license tax proceeds go to defray regulatory expense or to supply revenue, or whether the license tax provisions are so dependent upon or involved with regulatory provisions as not to be susceptible of independent application. If not thus dependent or devoted to regulatory expense,

they are enforceable in areas where regulatory provisions are not. Regardless of unexpressed legislative motive in their adoption, or of incidental effect, they remain tax provisions and must be given or denied effect as such.

"It is not the function of this Court in cases like the present ▮ to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation." State Board of Tax Commissioners of Indiana v. Jackson, supra [283 U. S. 527, 51 S. Ct. 543]. Thus it is not for the court to inquire concerning the motives which may have prompted the classification adopted in a particular tax statute, or to consider whether another classification might justly have been provided for the benefit of stores like defendant's, which are operated during only part of the year. Classification being a matter of policy and thus within the legislative sphere, it must be sustained unless unreasonable. In any event, the legislative purpose or effect complained of by defendant cannot properly be characterized as "regulation" or "regulatory." The extreme difference between the annual licenses for the first store and the sixth, seventh or eighth store is $32.50. Certainly that difference cannot have the effect of forcing or inducing their abandonment nor of adjusting, governing, restricting, or otherwise changing the manner of their operation.

" 'To regulate' means to adjust; to govern by rule; to direct ▮ or manage according to certain standards or laws; to subject to rules, restrictions, or governing principles." City of Butte v. Paltrovich, 30 Mont. 18, 75 Pac. 521, 104 Am. St. Rep. 698. Such incidental effect as the tax may have cannot be considered regulatory.

However if it were so considered, the same answer applies as ▮ was given in Collins v. Yosemite Park & Curry Co., supra, with reference to other questions. The Court said:

"The objection that collection of the taxes may not only interfere with an agency of the United States but may be actually partly collected from the National Government because

of its interest in the profits under the contract is fully answered by the fact that the United States, by its acceptance of qualified jurisdiction, has consented to such a tax.''

In other words, the United States has assented to the tax whether it constitutes an incidental interference with an agency of the United States or whether it involves an incidental regulatory effect.

Defendant argues further that the criminal penalties for violation provided by section 11 of the Act cannot be enforced in Glacier National Park and that the legislature cannot therefore have intended the balance of the Act to apply there. However, the legislature indicated by the usual separability clause that each portion of the Act should, if necessary, stand without reference to other portions. Furthermore, even in the absence of a separability clause, it does not generally follow that the applicability of one provision in a given situation depends upon the applicability of others or that the inapplicability of one provision under certain conditions indicates a legislative intent that none shall there apply, unless they are so interdependent that they must apply jointly or not at all. Section 10519, Revised Codes, providing that ''where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all,'' does not mean that if in a given situation it is not possible to give effect to all, the court shall therefore give effect to none. It means that as many as possible shall be given effect and not that they shall all stand or fall together.

Defendant argues further that if the legislature had intended the statute to apply to Glacier National Park, it would have especially excepted the penal provisions of section 11 from applicability there. However, the terms of the cession and acceptance of jurisdiction are paramount and if they exclude its application no further provision to that effect is necessary. On the contrary, the legislature expressly made the Act applicable to all stores maintained ''in this State,'' and the courts must correspondingly enforce it except to the extent, if any,

to which such enforcement is prevented by the cession of jurisdiction.

The same is true as to defendant's argument concerning the provision of section 1 that it "shall be unlawful" to operate a store without first obtaining a license. The provision does not mean that the consent of the State must be obtained before a store can be operated in Glacier National Park. It is merely part of the enforcement method by which section 11 imposes a criminal penalty in addition to other methods of inducing payment of the tax. If, as defendant argues, that part of the Act is not enforceable in the Park, it does not follow that the legislature therefore intended that the license provisions and the other means of enforcement thereof should not there apply. As the United States Supreme Court said in Collins v. Yosemite Park & Curry Co., supra: "The state has, under its reservation, the right to use means to force collection of the taxes saved (Rainier National Park Co. v. Martin, D. C., 18 F. Supp. 481, 488) * * *."

Defendant argues that the failure of the relator Board to enforce the preceding Act (Chapter 155, Laws of 1933) with reference to its stores in Glacier National Park constitutes an executive construction that this Act does not apply to them. Assuming the validity of the premises, it does not follow that an executive construction can control a statute which, by its terms, is not open to construction but clearly imposes a tax upon "any person * * * desiring to open, establish, operate and maintain a store in the state of Montana" without qualification or exception.

The judgment is reversed and the cause remanded to the District Court with directions to render judgment for plaintiff in accordance herewith.

Associate Justices Morris, Adair, Angstman and Cheadle concur.