BREAUX, O. J.
Plaintiff brought this action against the defendants for $30,000. for injury suffered by the death of her late husband, Frank Cunningham, a construction iron worker, which caused his death. He was working for the Penn Bridge Company.
The judgment allowed damages in the sum of $7,000 against each defendant.
They appealed.
On the 18th day of May, 1909, at about 10 o’clock in the morning, the bridge at the intersection of Bayou St. John and Esplanade Avenue broke and collapsed and in the collapse Cunningham received injuries from which he died a few hours afterward.
There is no absolute certainty where he was standing at the time, or what he was doing. The theory of plaintiff, supported by some evidence, is that he was at work taking out a siphon pipe, in the way of the bridge span, which was being lowered from a vertical to a horizontal position. At about 10 feet from its anchorage or resting place, while being lowered in its position, there was a break in one of its parts, followed by a crash. Part of the, bridge fell in the stream and part in the pit on the Esplanade side.
The theory of defendants, different from that of plaintiff, as to where decedent was standing, is that he was standing on the bank and left his place of safety and walked to the bridge and over the pit, and, while there, the bridge collapsed, and he met with the accident which resulted in his death.
The contention of plaintiff is that the Penn Bridge Company was negligent and the city of New Orleans and that, as the city maintained supervision and control of the work in constructing the bridge, it was liable as well as the Penn Bridge Company.
Defendants filed a plea of no cause of action, and in their answer denied all liability, and pleaded contributory negligence. The foregoing is a statement of the salient issues. The facts are:
The price of the construction was $45,000. That this bridge was a steel cantilever bridge. It was made up of steel works to carry double tracks of street railway, 22 feet in the clear, and two sidewalks, 6 feet in the clear, with side trusses leading from one end to the other. It had trunnion supports riveted to structural steel base; also a trunnion girdle; the bearings fastened to the truss. It had a counterweight weighing 200 pounds per cubic foot, trusses, floor beams, approach gutters, cross-beams counter weight box, latteral and sway bracing of medium steel. As relates to its strength, this bridge failed.
This type of bridge is of recent date. It was a bascule trunnion bridge. They have come into use in answer to the demand for a stronger bridge and longer span.
The stream over which this bridge spanned is about 150 feet in width. The intention was for this bridge to carry heavy live weight in addition to its own weight, which was considerable. At the time of the collapse it had only its own weight, and even all of that had not yet been put on.
On the day of the accident the engineer *199 of the city desired to inspect the riveting on the span as well as other parts of the bridge. The span was in a vertical position, moored to columns on the east side of the bridge. As the engineer was not skilled in climbing, the order was given to lower the span to the horizontal position. The motor of the bridge was not yet in use. Instead of using its own motor as it was not yet complete, the lowering was slowly done by the use of cables, block, and tackle, guy ropes fastened to the derrick. About 10 feet from the horizontal rest on the abutment, it happened that there was a siphon and siphon pipe in the way of the lowering. The foreman ordered two of the workmen (not the decedent) to go where the siphon and pipe were and move them out of the way in order that the lowering of the bridge might be continued. This was done, the siphon was removed, and the lowering was resumed. The foreman stepped away from where he was standing to a neighboring house to answer a telephone message. It was just then the bridge broke as before mentioned. Immediately after the fall, the deceased was found in the pit fatally wounded. Taking up the issues for decision, it is our pinion that the deceased moved from the bank where he was standing to the bridge over, and a few feet beyond the pit while the span was being lowered. The crash came, he lost his balance, fell into the pit, and was thrown against an iron bar. We will refer specially to part of the evidence on this point.
Louis Sperier testified that:
“He fell in the pit. He was on the floor of the bridge. He lost his balance and fell in the pit.”
Marmouget, another witness, does not entirely agree with this statement. He testified that the deceased was at work in the pit and an iron bar fell on him.
McClellan testified that Cunningham at the time was helping to get the siphon pipe out of the way, and corroborates Marmouget. He adds that Cunningham was on top the girder, assisting in handling the rope, which in some respects coincides with Sperier’s testimony.
One of the witnesses for defendants, Matthews, testified that Cunningham was standing, on the bank. The order was given to stand clear of the bridge. He — this witness —heard the order. Whether Cunningham heard or not is not proven.
[1] If Cunningham did not hear the order, left the bank, and went to the floor to assist other workmen, it was not contributory negligence.
“Contributory negligence is a matter of fact, which defendant must prove by evidence.” Buechner v. City, 112 La. 600, 36 South. 604, 66 L. R. A. 334, 104 Am. St. Rep. 455.
Another point of difference between the testimony of witnesses is in regard to the order which the foreman swears he gave to step out of the way of danger. There are witnesses who testified that they heard this order of the foreman; others did not. There is nothing in the testimony which leads with any degree of certainty to the inference that the decedent heard this order, and that It was by him disregarded. But of this later.
The first question which arises is whether the bridge and the span were reasonably safe at the time. They were not. The bridge broke near the trunnion or fulcrum; the latter being practically the same as a trunnion. It was the weakest part of the bridge, too weak and defective to support its weight. There is no difficulty in determining where the deficiency was. The engineers agreed that it was at the lower cord next to the trunnion frame. The lower cord having broken, the upper cord also failed, as it could not bear the additional weight. Neither of these cords was what it should have been. We append a diagram of the cords and of the truss, which also shows the pit and the *201 span. The testimony of the experts agree about the insufficiency and defectiveness of the bridge at the trunnion. There is no reason, it follows, for extended discussion at this point.

But the Penn Bridge Company earnestly contends that it is not responsible for this weak point, while the city of New Orleans urges that it was the fault of the bridge company.
There is no necessity of determining, in order to ascertain whether or not this judgment should be sustained, whether the city or the bridge company is at fault. As between plaintiff and these defendants, the latter were both at fault. The design was furnished by the city and the general plan. The shop plans were furnished by the bridge company.
The contention of the steel company is that the error was in the design, and the fact is mentioned that the design and the general plan are of great importance in the construction. It was stated in the testimony that the memorable break of the bridge over the St. Lawrence, 'near Quebec, not long since, was as in this instance, owing to the deficiency of the design. The contention of the city, on the other hand, is that it was in the shop plan and in the execution of the work.
Be that as it may, the decedent was in the employ of the bridge company, and the city, as we have stated, furnished the general plan. It would have been an easy matter on the part of both to do the work without its resulting in a disaster. From that point of view it follows that both may be held in solido in damages. The negligence of two persons or of two corporations may concur to produce an injury. 1 Thompson on Negligence, paragraph 177, p. 175.
During oral argument learned counsel for the city said that the bridge company was an independent contractor. We are unable to agree with that view particularly as between plaintiff and defendants.
The commentator above cited says that, if a proprietor is made to pay damages on account of the contractor’s negligence, the latter may be liable. Paragraph 622, p. 570. The city has not been made to pay damages as yet, and may never be for all we know. Nor is this cause in a condition in this suit to condemn either the city or the bridge company one as against the other. We will state that from the same commentator we gather:
“When the owner maintains control, on a given particular of the work, the contractor is not an independent contractor.”
The city certainly retained some control over the construction.
[2] On the evidence produced, we will not assume that plaintiff’s husband imprudently exposed himself. He had no reason to suspect that he was in danger. No one else saw that there was danger, or that there was the least harm lurking in the lowering bridge. As he did not receive notice to keep clear of *203 the bridge, we would not be justified in holding that he by his imprudent act contributed to his death. There are witnesses who heard the foreman give the notice before mentioned ; others who did not hear him. We will not presume that Cunningham was among those who heard the order, and willfully disregarded it. There should have been some energy or activity shown in giving the order so as not to leave the least doubt on the subject. This was not the case. Express notice in view of the cause of the accident was necessary in order to relieve the master from liability. It was only by express notice that one could have been expected to go where no danger was apprehended. Workmen on a bridge will walk to different parts of it without hesitation; and, if one lends his aid at any particular point, or in seeking to aid in doing the work on hand, he is not guilty of contributory negligence under the circumstances disclosed by the testimony.
The giving the notice to" the workmen to stand clear of the bridge was not clearly proven. Mr. Harstentine, who was present and in charge of the construction, testified that he instructed the foreman as a matter of safety for the workmen that at any time that he proposed to lower the bridge he should call the workmen of the bridge, and direct them to stand clear of the bridge. Had the instruction of Harstentine been followed, it is highly probable there would have been no ground for dispute. It should have been given by the foreman in a loud voice so that every one could have heard.
The last proposition on the part of the Penn Bridge Company is that at this time and in the ease now under consideration we should decide who is liable as between it and the city of New Orleans.
[3] We are not of that opinion. Our reasons are: Were we to decide at this time as between the two on the demand of the bridge company, wé would have on appeal to consider questions which have not heretofore been considered by the district court. This would not be in accordance with our jurisprudence. Early in the action, on motion of plaintiff, the demand as between the two defendants was dismissed. It was not, therefore, considered at all, the court declining to assume jurisdiction over the question holding that it would decide issues exclusively between plaintiff and defendants. In the present situation, and as the issues are before us at this time, we are not of opinion that we should consider this last insistence of the defendant just named. The most that might be done would be to remand the case in order that the issues between defendants might be tried and decided. But it appears to us, the judge of the district court having reserved the right to each in this respect, there is no necessity to remand the case and to let it remain open to determine the issues as between the two defendants. We will not, therefore, remand the case.
As relates to the quantum of damages; The decedent lived over four hours. He doubtless suffered physically. 1-Iis widow is entitled to damages which we think have been about correctly measured by the district judge, who saw and heard the witnesses.
For reasons stated, the judgment is affirmed.