## Gulfport & Mississippi Coast Traction Co. v. Robertson, State Revenue Agent.

[92 South. 221.   No. 22611.]

1. **Street Railroads.** *Defined.*

   A street railroad is a railroad on a street to facilitate its use as a way for persons to pass from one point to another in a city or through it.

2. **Street Railroads.** *Interurban railroad within city classed as "street railroad."*

   That portion of an interurban railroad which traverses the streets of a city or town and performs therein the functions of a street railroad is and must be classed as a street railroad, but that portion of it which does not perform such function is not and cannot be classed as a street railroad.

3. **Street Railroads.** *Privilege tax is due by interurban railroad only on street railroad part.*

   Where only part of an interurban railroad is a street railroad, the privilege tax due by it under section 3874, Code 1906 (section 6590, Hemingway's Code), which imposes a privilege tax "on each street car company operating a line on each mile or fraction thereof, twenty dollars," is only that part of its road that is a street railroad.

4. **Licenses.** *Interurban and street railroad held liable to statutory damages for failure to pay privilege tax.*

   An interurban and street railroad company which in good faith pays a privilege tax and procures a license for operating an ordinary third class railroad, instead of for operating an interurban and street railroad, is, notwithstanding its good faith in paying the tax and in procuring the license, liable to the damages imposed by section 3901, Code 1906 (section 6630, Hemingway's Code), for the failure to pay a privilege tax and to procure the necessary license during the month in which it is due.

Appeal from circuit court, Harrison county.

Hon. D. M. Graham, Judge.

Three suits by Stokes V. Robertson, State Revenue Agent, against the Gulfport & Mississippi Coast Traction Com-

pany to recover privilege taxes and from a judgment therein the defendant appeals, and the plaintiff brings cross-appeal. Reversed and remanded.

*White & Ford,* for appellant and cross appellee.

Is Appellant Liable For Double Taxes As a Penalty? We will first address ourselves to the cross appeal taken by the plaintiff, based on the failure of the court to require defendant to pay double the amount of taxes due by way of penalty.

This claim for double taxes is based on section 3901 of the Code of 1906, being section 6630 of Hemingway's Code and is in the following language:

"Damages In Case Of Failure To Procure License: All persons or corporations liable for privilege tax who have failed to procure the license during the month in which it is due shall be liable for double the amount of the tax and it is hereby made the duty of the tax collector to collect the amount, issue a separate license therefor, and to endorse across its face the words 'collected as damages.'"

This statute being highly penal must be strictly construed. The court will note that the penalty provided in the statute is for "failure to procure license during the month in which it is due." There is no penalty for failure to pay the privilege tax, and certainly none for the failure to pay a sufficient privilege tax; but the penalty is for the failure to procure the license required to do business.

In each of said special pleas, it is stated that the defendant paid during the month the same became due the privilege tax fixed by the Railroad Commission and during said month for each of said years "Procured the license required by law."

This allegation set out in the plea is not denied by the replication filed thereto, and inasmuch as said pleas were directed only to the right of the plaintiff to recover the penalty sought to be recovered, it stands admitted in the record that the appellant during the month that the privi-

lege tax fixed by the said State Railroad Commission and procured the license required by the statute, and it follows therefore that the court properly sustained defendant's demurrer to the several replications filed by plaintiff.

The penalty being based on failure to procure license, in other words, the penalty being imposed for doing business without license—and not for failure to pay sufficient privilege tax, no penalty can be exacted of appellant without giving a liberal, instead of a strict, construction to this penal statute and reading into it by construction something that the legislature has not written into it.

Is Appellant Liable For Privilege Tax As An Interurban Railway? Laws imposing privilege taxes are to be constructed in favor of the citizen and no occupation is to be taxed unless clearly within its provisions. *Ex Parte Taylor,* 58 Miss. 478; *Vicksburg Etc., Ry. Co.* v. *State,* 62 Miss. 105; *Bluff City Ry. Co.* v. *Clark,* 95 Miss. 689.

A change in the phraseology of an amendatory statute raises a presumption that a departure from the old law was intended. The legislature must be presumed to know both the language employed in the act and the judicial construction placed upon them; and if in a subsequent statute on the same subject it uses different language in the same connection the courts must presume that a change in the law was intended. 25 R. C. L. p. 1051, citing long list of authorities.

Prior to 1920, the law imposing a privilege tax on street cars was as follows: "Street Cars. On each street car company operating a line on each mile or fraction thereof, twenty dollars." Code 1906, section 3874, Hemingway's Code section 6590.

By the Act of 1920, this section was amended to read as follows: "Street Cars. On each individual firm or corporation operating a street car or interurban car line, on each mile or fraction thereof, thirty dollars." See supplement Hemingway's Code, section 6590.

It will thus be seen that prior to 1920, there was no privilege tax for operating an interurban railway but only

a tax on street railways and unless appellant was liable for the privilege tax as a third class railroad, it was only liable to pay a privilege tax for that part of its line which could be classed as a street railway.

While the line of demarkation distinguishing a street car railway from an interurban railway has not been always clearly recognized, and while the character of each electric railroad must be determined with reference to its business, location and the conditions under which it is operated, it is fairly well established that as a general rule an interurban electric railway entering a city and operating under ordinances authorizing it to use the streets of the city, becomes a street railway within the city at least as to that part of the track within the streets, notwithstanding the fact that when it leaves the city it is an interurban railway. *Jeffers* v. *City of Annapolis*, 68 Atl. 361; *City* v. *Seattle R. & S. R. Co.*, 116 Pac. 638; *City of Aurora* v. *Elgin Traction Co.*, 81 N. E. 554; *Gillette* v. *Aurora R. R. Co.*, 81 S. E. 1005; *Dewey* v. *Chicago & M. Electric R. R. Co.*, 56 N. E. 804.

While the fact that an electric railroad is an interurban line outside a municipality, does not prevent it from becoming a street railroad when it enters and occupies the streets of the city, the converse of that proposition is equally true, and the fact that it is a street railroad within the city or cities through which it passes does not make it any the less an interurban railway when it leaves the streets of the city and operates on its private right of way between municipalities.

*Rushing & Guice*, for appellee and cross-appellant.

We submit that the case of *Gulfport & Mississippi Coast Traction Company* v. *City of Biloxi*, 88 So. 173, is decisive of the liability of the appellants in this cause.

We will first discuss the proposition of whether this company, "was a street car company operating a line."

By section 3 of appellants charter it appears, "The objects and purposes for which this corporation is created

are to manufacture gas and electricity to generate light and power by means thereof to buy, build, maintain and operate electric light and street railway power systems in the counties of Hancock, Harrison and Jackson, in the state of Mississippi, etc." (Rec. p. 102).

From the agreed statement of facts it appears that the appellant acquired franchises for street railway systems in both the city of Biloxi, and city of Gulfport and consolidated the street railways system in said places into one line. It also appears from the agreed statement of facts that defendant operated both large and small cars some of them in interurban traffic and some local and small cars with transfers between, that its lines were divided into zones, most of the time, the fare being five cents, that both local and interurban cars stopped to take on and discharge passengers in the city limits. That the cars have separate compartments for the races but no drinking water or toilets. That in the limits of the municipalities the cars stop at the intersection of practically all streets. That during the greater period of 1915 to 1919, the fare within the separate limits was five cents, irrespective of the distance the passenger was carried. That on the line between Biloxi and Long Beach and to a point near Pass Christian the track is located between the public highway and the Mississippi Sound, running parallel with said highway and that the cars make frequent stops along the line of the said highways, which stops were located with reference to the people living along said line. That the tracks are laid on main streets of Biloxi and Gulfport. That there are over one hundred stops between Biloxi and Pass Christian. That cars were operated on a half hour schedule.

In 25 R. C. L. p. 1116, it is said: "A marked difference between the two systems is that a commercial railway often carries long trains of passenger and freight cars over its line, and is not intended at all for the accommodation of the public desiring to go from one portion of the city to the other, while a street railway ordinarily uses one car,

and facilitates the transportation of passengers desiring to go only short distances between different points in the city. The fact that a railroad is incorporated under a general railroad law has been held to determine its character as a commercial railroad; and conversely that a railway has been constructed under authority of an act relating to street railways has been held conclusive of its character as a street railway." 13 Cyc. p. 1347; *State* v. *Duluth Gas Co.,* 76 Minn. 96, 78 N. W. 1032, 57 L. R. A. 63; *Michigan Central Ry. Co.* v. *Hammon West & E. C. Electric Ry. Co.,* 83 N. E. 650; *Summelan* v. *Pacific Electric Ry. Co.,* 115 Pac. 320; *F. W. Cook Lw. Co.* v. *Evansville Terminal Ry. Co.,* 93 N. E. 279; *Reitze* v. *Same, Id.* 283; *Galveston H. & C. Ry. Co.* v. *Houston Elec. Co.,* 122 S. W. 287; *Shreveport Traction Co.* v. *Kansas City S. & G. Ry. Co.,* 44 So. 457, 119 La. 759, Md. 1907, 52 N. E. 192; *Massilleon Bridge Co.* v. *Camuria Ice Co., —— ——; Louisville & P. R. Co.* v. *Louisville City R. R. Co.,* 2 Duv. 175; Elliot, Roads & Steam, p. 557 and by Ror., Railroad 1422; *Bridge Co.* v. *Iron Co.,* 53 N. E. 192.

Street and commercial railroads defined and distinction stated. *Hatzel* v. *Alton Gramte & St. Louis Traction Co.,* 104 N. E. 1080, 236 Ills. 205.

Appellant contends that on account of the amendment of 1920, to the code section under which the instant case is brought that this is a change in phraseology and raises a presumption of a departure from the old law, our reply to this contention is that the very authority they quote reads as follows: "When however the intention of the legislature to change the law is too apparent to admit of any doubt it must be followed," and after a consideration of the spirit and letter of the statute will give effect to its terms according to their proper significance. 25 R. C. L. pp. 1050-1051—so while using an isolated phrase from this paragraph it throws a difficult light on the proposition when the whole paragraph is examined.

We submit that there was no change in the phraseology of the old law which would affect the instant case.

Section 3901 Mississippi Code of 1906 (section 6629 Hemingway's Code), reads: "All persons or corporations liable for privilege tax who fail to procure the license during the month in which it is due shall be liable for double the amount of the tax and it is hereby made the duty of the tax collector to collect the amount, issue a separate license therefor and to evidence across its face the words "collected as damages.'"

Appellant, and cross-appellee contend that the damage is assessed for the failure to "procure a license," and that inasmuch as it procured a "license" it would not be liable for the penalty, our contention is that it did not procure the license required by law. The court will observe that the statute contains the word *the* and not *a* license. *Bennett* v. *Jones*, 66 So. 277; *Brittain & Henry* v. *Roberson*, 83 So. 4; *Smith* v. *Perkins*, 112 Miss. 870, 73 So. 797; *Johnson* v. *Long Furniture Co.*, 113 Miss. 373, 74 So. 283.

The ground upon which it is sought to maintain the bill is that section 3901, Code of 1906 (section 6630 Hemingway's Code) does not apply where the failure of a person to pay a privilege tax due by him is caused by his honest belief that he is not liable therefor. The statute contains no such exception, either expressed or implied; consequently the judgment of the court below is correct.

We submit that the court below committed no error in rendering judgment for the tax but did err in disallowing the penalty claimed and that appellee and cross-appellant is entitled to judgment here for the taxes and the penalty.

Smith, C. J., delivered the opinion of the court.

The appellee instituted three suits against the appellant in the court below to recover from it privilege taxes which he alleges the appellant should have paid for the years 1915 to 1920, inclusive, under section 3874, Code of 1906 (section 6590, Hemingway's Code) and chapter 104, Laws of 1920, and for the damages imposed by section 3901, Code of 1906 (section 6630, Hemingway's Code), for the failure

to pay a privilege tax during the month in which it becomes due.  These suits were for the benefit of the state, the city of Gulfport, and the city of Biloxi, and as they involve the same facts and questions of law they were consolidated by agreement and submitted to the court to be decided without a jury on an agreed statement of facts.  After hearing the cause the court below rendered a judgment for the appellee in accordance with his demand, except that it refused to award him damages for the appellant's failure to pay the taxes when due.  From this judgment there is both a direct and cross-appeal; the direct appeal being by the defendant and the cross appeal by the plaintiff in the court below.

The agreed statement of facts is quite lengthy, but it appears therefrom, in substance, that the appellant is operating an interurban railroad along the Mississippi Coast, connecting and passing through several towns and cities, among which are the cities of Gulfport and Biloxi.  These towns and cities are connected by a public road which runs a short distance from the beach between which and the beach runs the appellant's road on its own private right of way.  Between these towns and cities the appellant's cars stop at regular stations which have been designated by the appellant, the convenience of persons living along the public road having been taken into consideration by it in selecting these stations.  The appellant's cars are ordinary electric trolley cars, three of which are for freight and the others for passenger traffic, the bulk of its traffic being the carrying of passengers.  Within the limits of the cities of Gulfport and Biloxi the appellant's road is laid partly in the city streets and partly on its own private right of way, but within the city limits its entire road, that laid in the streets and that on its own private right of way, is devoted to the performance of the ordinary functions of a street railroad, that is to say to the facilitation of the passage of persons from one point in the city to another.

During all of the years for which the tax is sought to be collected there has been in force in each of these cities an

ordinance imposing a privilege tax on each business conducted therein of 50 per cent. of the privilege tax imposed thereon by the state. Prior to and during each of these years the appellant's road was classed by the State Railroad Commission as a third class railroad, and the appellant paid to the state for each year a privilege tax of ten dollars per mile, imposed by the state for operating such a road; and to the city of Gulfport for each of the said years, and to the city of Biloxi for the years 1915 to 1919, inclusive, five dollars for each mile of its road within the city limits for the privilege of operating such a road. The recovery sought and awarded is for the difference between the privilege tax paid by the appellant and that which the appellee claims it should have paid under the statutes hereinbefore referred to.

Section 3874, Code of 1906 (section 6590, Hemingway's Code), imposes a privilege tax "on each street car company operating a line, on each mile or fraction thereof, twenty dollars," and was amended by section 60, chapter 104, Laws of 1920, so as to impose a privilege tax "on each individual, firm, or corporation operating a street or interurban car line, on each mile or fraction thereof, thirty dollars."

In *Gulfport & Mississippi Coast Traction Co.* v. *City of Biloxi,* 125 Miss. 626, 88 So. 173, it was held that this appellant is operating a street and interurban railroad, from which it follows that the appellant is due the tax sought to be collected under chapter 104, Laws of 1920, to the state on the total mileage of its road and to the city of Gulfport on the total mileage thereof within the limits of the municipality, no recovery being sought under this statute for the city of Biloxi, so that we are concerned here only with the question of the appellant's liability under section 3874, Code of 1906 (section 6590, Hemingway's Code).

"A street railroad is, as the name signifies, a railroad on a street to facilitate its use as a way for persons to

pass from one point to another in a city or through it."
25 R. C. L. 1114.

Interurban railroads are of recent origin and are "a
sort of hybrid, having in some respects the characteristics
of the ordinary railroad, and in others those of the street
railroad. Within the limits of the cities which they enter
they usually pass along the streets, and perform the or-
dinary functions of street railroads, stopping where de-
sired to let passengers on or off, and serving the public
need for local street travel. Outside the cities, on their
way from one city or town to another, they frequently
travel upon a roadway obtained from private persons, not
upon a public road, and stop, as in case of ordinary rail-
roads, only at stations established by them for that pur-
pose." *S. F. & S. M. Electric Ry. Co.* v. *Scott,* 142 Cal. 222,
75 Pac. 575, 2 Words and Phrases, Second Series, p. 1169.

That portion of such a road which traverses the streets
of a city or town and performs therein the functions of
a street railroad is and must be classed as a street rail-
road, but that portion of it which does not perform such
function is not and cannot be classed as a street railroad.
*Jeffers et al.* v. *Annapolis* (Md.) 68 Atl. 361.

The evident purpose of section 3874, Code of 1906 (sec-
tion 6590, Hemingway's Code), is to impose the tax on
each mile or fraction thereof of the company's street car
line, from which it follows that under that statute the
appellant can be taxed only on that portion of its road that
can be classed as a street railroad.

As hereinbefore stated, as we understand the agreed
statement of facts, that portion of the appellant's road
within the municipalities which does not traverse a street
performs the ordinary functions of a street railroad, and
consequently must be classed as a portion of its street rail-
road. 25 R. C. L. 1118.

It follows from the foregoing views that the court below
committed no error in awarding a recovery of the taxes
alleged to be due the municipalities, but should not have
permitted a recovery for the state on the appellant's total

mileage except for the year 1920, and for the other years should have limited the recovery to its mileage that comes within the classification of a street railroad.

Section 3901, Code of 1906 (section 6630, Hemingway's Code), on which the cross-appeal is based, provides that: "All persons or corporations liable for privilege tax who shall fail to procure the license during the month in which it is due shall be liable for double the amount of the tax, and it is hereby made the duty of the tax collector to collect the amount, issue a separate license therefor, and to indorse across its face the words 'collected as damages.' "

While the appellant paid a privilege tax and procured a license, the tax paid and the license procured were not for operating a street railroad, but for the privilege of operating an ordinary third class railroad, and since its good faith in procuring the wrong license can afford the appellant no protection (*Brittain & Henry* v. *Robertson, State Revenue Agent,* 120 Miss. 684, 83 So. 4), the court below should have awarded the appellee the damages imposed by the statute.

*Reversed and remanded.*