**GREAT ATLANTIC & PACIFIC TEA CO. v. GROSJEAN, Supervisor of Public Accounts, et al.**

**No. 277.**

District Court, E. D. Louisiana.

July 24, 1936.

500

Monroe & Lemann, of New Orleans, La., for complainants and interveners.

Gaston L. Porterie, Atty. Gen., and Justin C. Daspit, Fred A. Blanche, and E. L. Richardson, Sp.Assts. to Atty. Gen., for defendants.

Before FOSTER and HUTCHESON, Circuit Judges, and BORAH, District Judge.

BORAH, District Judge.

This controversy involves the validity of the chain store license statute of Louisiana. Complainant, an Arizona corporation which with its affiliates operates 106 stores in Louisiana and a total of 15,082 elsewhere in the United States and in Canada, initiated this proceeding by the filing of a class bill in which twelve other foreign corporations operating retail units in Louisiana intervened and became co-plaintiffs, praying that the tax officials be enjoined from enforcing the act. The complainants challenge the statute as violative of the due process and equal protection clauses of the Fourteenth Amendment, of the corresponding provisions of the Constitution of Louisiana (article 1, § 2), and of the commerce clause of the Federal Constitution (article 1, § 8, cl. 3). Upon the filing of the bill a temporary restraining order was issued after notice, restraining the enforcement of the statute against the complainants. The defendants agreed without prejudice to the ultimate rights of any party to the suit that it was proper for the matters involved to be held in statu quo until a hearing could be held on the merits, and accordingly an order for an interlocutory injunction was issued by a specially constituted District Court upon the case made out by the affidavits of complainant and intervenors to the original and intervening bills. The case was in due course set down for hearing, and the matter is now before the court for disposition on the merits.

The statute here under review, Act No. 51 of the Louisiana Legislature of 1934, was enacted pursuant to the provisions of section 8, article 10, of the Constitution of Louisiana for the year 1921, authorizing the Legislature of Louisiana to levy license taxes, and providing that such license tax may be classified, graduated, or progressive.

Section 1 of the act provides: "Be it enacted by the Legislature of Louisiana, That because of the advantages accruing from the operation of multiple stores wherever situated, and because of the basic difference inherent in such character of operations, there be and is hereby levied an annual license tax for the year 1935 and for each subsequent year upon each person, firm, partnership, corporation or association of persons engaged in the business of operating, or maintaining, as part of a group or chain, any store or stores in this State, where goods, wares, merchan-

dise or commodities of every description whatsoever are sold or offered for sale at retail under the same general management, supervision, ownership or control, commonly known as branch or chain stores."

Section 3 of the act provides:

"That the license tax for said business described in this Act levied upon the store or stores operated in the State of Louisiana shall be based on the number of stores or mercantile establishments included under the same general management, supervision, ownership or control, whether operated in this State or not, and shall be fixed and graded as follows, to-wit:

"(1) Upon stores or mercantile establishments operated in this State and belonging to a chain or group having a total of not more than ten stores, the annual license shall be Ten ($10.00) Dollars for each such store operated in this State.

"(2) Upon stores * * * having a total of more than ten stores, but not more than thirty-five stores, the annual license shall be Fifteen ($15.00) Dollars for each such store. * * *

"(3) Upon stores * * * having a total of more than thirty-five stores but not more than fifty stores, the annual license shall be Twenty ($20.00) Dollars for each such store. * * *

"(4) Upon stores * * * having a total of more than fifty stores but not more than seventy-five stores, the annual license shall be Twenty-five ($25.00) Dollars for each such store. * * *

"(5) Upon stores * * * having a total of more than seventy-five stores but not more than one hundred stores, the annual license shall be Thirty ($30.00) Dollars for each such store. * * *

"(6) Upon stores * * * having a total of more than one hundred stores but not more than one hundred twenty-five stores, the annual license shall be Fifty ($50.00) Dollars for each such store. * * *

"(7) Upon stores * * * having a total of more than one hundred twenty-five stores but not more than one hundred fifty stores, the annual license shall be One Hundred ($100.00) Dollars for each such store. * * *

"(8) Upon stores * * * having a total of more than one hundred fifty stores but not more than one hundred seventy-five stores, the annual license shall be One Hundred Fifty ($150.00) Dollars for each such store. * * *

"(9) Upon stores * * * having a total of more than one hundred seventy-five stores but not more than two hundred stores, the annual license shall be Two Hundred ($200.00) Dollars for each such store. * * *

"(10) Upon stores * * * having a total of more than two hundred stores but not more than two hundred twenty-five stores, the annual license shall be Two Hundred Fifty ($250.00) Dollars for each such store. * * *

"(11) Upon stores * * * having a total of more than two hundred twenty-five stores but not more than two hundred fifty stores, the annual license shall be Three Hundred ($300.00) Dollars for each such store * * *.

"(12) Upon stores * * * having a total of more than two hundred fifty stores but not more than two hundred seventy-five stores, the annual license shall be Three Hundred Fifty ($350.00) Dollars for each such store. * * *

"(13) Upon stores * * * having a total of more than two hundred seventy-five stores but not more than three hundred stores, the annual license shall be Four Hundred ($400.00) Dollars for each such store. * * *

"(14) Upon stores * * * having a total of more than three hundred stores but not more than four hundred stores the annual license shall be Four Hundred Fifty ($450.00) Dollars for each such store. * * *

"(15) Upon stores * * * having a total of more than four hundred stores but not more than five hundred stores, the annual license shall be Five Hundred ($500.00) Dollars for each such store. * * *

"(16) Upon stores * * * having a total of more than five hundred stores, the annual license shall be Five Hundred Fifty ($550.00) Dollars for each such store."

· The bill alleges, and it is admitted, that the complainant is engaged in the business of selling groceries, fruits, vegetables, poultry, meats, cheese, eggs, and other foods, meats, and dairy products or goods commonly sold in grocery and meat stores, and has been so engaged for more than ten years. It operates under the same general management, supervision, ownership, or control 15,082 stores, of which 14,800 are located in the United States and 282 are located in Canada. Of this number, 62 stores are located in the city of New Or-

leans and 44 stores are located at points in Louisiana outside the city of New Orleans, and it has capital invested in the State of Louisiana approximating half a million dollars.

The bill alleges that, prior to the enactment of the 1934 statute, the tax imposed by the state of Louisiana upon chain stores was that established by Act No. 19 of the Louisiana Legislature of 1932. The act of 1932, like the chain store tax statute of every other state in which such tax exists, provided for a classification based only upon the number of stores operated in the state and established ten classes comprising units of five each, and an eleventh class comprising all stores in excess of 50. The tax upon stores in the last class under said act was $200 per store; stores falling within the lower classes paying at lower rates according to number of stores in each .class, the said rates ranging from $15 to $100 per store for stores less than 50 in number.

The bill charges that the purpose and effect of the 1934 statute was to reach operators of chains outside Louisiana so as to produce revenue for Louisiana by an extraterritorial tax and at the same time to discriminate in favor of local chains by reducing the rates applicable to a local chain and increasing the rates applicable to a foreign chain, even though the local chain may operate far more extensively in the state than does the foreign chain. Thus H. G. Hill Stores, Incorporated, which is in direct competition with the complainant, the Great Atlantic & Pacific Tea Company, and operates in New Orleans more stores than does the complainant, is required under the Louisiana statute to pay for its 87 stores $30 per store, whereas the complainant has only sixty-three stores in New Orleans, but each of said stores is required to pay a tax of $550.

In addition to the facts averred in the bill, the complainants offered evidence to prove the following points:

Operations of chains doing business in more than one state vary greatly from section to section and from state to state because of differences in local conditions, economic and otherwise, freight rates added to cost, remoteness from headquarters and executive management, increase in difficulty of supervision, local competition, and other factors.

Conditions as to sales and profits vary greatly in all classes of stores according to the section of the country in which they are located. In almost every case operations in Louisiana are less than average for all stores operated by the particular company.

In every important respect the operations of the complainant are the same as those of H. G. Hill Stores, Incorporated. The gross volume of the sales of the Hill Stores in New Orleans is very much greater; they have more stores and do more business per store than the stores of the Great Atlantic & Pacific Tea Company, and under the statute they pay $30 per store, while complainant is required to pay a maximum of $550 per store on every store.

Other corresponding differentials are set forth to show that one of the purposes and effects of the Louisiana statute is to discriminate in favor of a company which operates in Louisiana a larger number of units than a competitor which operates a smaller number of units in Louisiana, but a larger total number in the world.

With reference to the situation in Louisiana as of date February 10, 1936, the proof shows that complainant operated 109 stores, of which 66 were in New Orleans; other food chains operated 197 stores; independent grocers operating under one general supervision and pooling their purchases operated 128 stores; and entirely independent grocers operated 2,820 stores. The census reports further show that the number of chain stores in Louisiana is decreasing at a more rapid rate than the number of independent stores, and that the number of wholesale stores in Louisiana is actually increasing.

The defendants produced evidence to prove that the retail units operated in Louisiana by complainant and interveners are part of a chain or system; that all the units of a retail chain contribute to the central purchasing power of the chain, irrespective of state lines and location of stores and increase the per unit multiple advantages enjoyed by the operator of the system; that the greater the number of units in the chain, the greater the purchasing power, the greater the secret rebates and allowances, the greater the advantages in advertising, the greater the capital employed, the greater the social and economic consequences, and the lower the cost of distribution and overhead.

Testimony was also offered similar to that found in the original chain store tax

case, State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 51 S. Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, establishing the difference in the type of operation between the operator of one store and the operator of many stores, and the difference in the type of operation, varying with the number of units, with additional reference to the difference in the method of operation of the Great Atlantic & Pacific Tea Company as compared with the H. G. Hill Stores.

In fine, the record in this case shows the contribution to the advantages made by each unit in the chain, and the per unit advantage made possible by the whole system, and in that respect only does it differ materially from the proof which was before the court in the Jackson Case. Indeed, the only question presented here over and above that which received the consideration of the court in State Board of Tax Commissioners v. Jackson, supra, Louis K. Liggett Company v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699, and Fox v. Standard Oil Company of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780, is the method used by the Legislature of Louisiana in arriving at the rate of the tax per unit in Louisiana.

 It is well settled under the authorities, supra, that there are differences and advantages in favor of large chains, and for that reason the state may tax the large chains more heavily than the smaller ones, and upon a graduated basis. In the present case the state imposes a license or privilege tax, clearly within its authority, for the privilege of doing business in Louisiana. The measure of that tax is the number of units in the chain in the state. The rate is determined by the number of stores in the entire chain. No property beyond the jurisdiction of the state is in any just sense taxed under the statute. The rate only is affected by units of the chain outside of Louisiana, and these units are considered only for the purpose of determining the type of business done in Louisiana and the value of the privilege of operating each unit in the state. Where, as here, the power to tax exists, the extent of the burden is a matter for the discretion of the Legislature. The wisdom of its exercise is not the concern of this court.

 Complainants further contend that the Louisiana statute does not represent any policy to protect, and was not designed to, and does not in fact, protect independent merchants against chains, but establishes an arbitrary discrimination against chains operating in other states. "The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Ref. Co. v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann.Cas.1917B, 455; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350." State Board of Tax Commission of Indiana v. Jackson, supra. The statute here assailed classifies chain stores in accordance with the economic advantages which they possess and gives recognition to the basic differences of their operations. It imposes a license tax for the privilege of operating retail units in multiple form reasonably adjusted in amount with regard to substantial differences in the value of the privilege exercised. The classification is neither arbitrary nor capricious. The statute treats upon a similar basis all owners of chain stores similarly situated. In the light of what we have said, this is all that is required by the equal protection clauses of the Federal and State Constitutions.

What has been said in respect of the contention that the tax establishes an arbitrary discrimination against chains operating in other states is a sufficient answer to the contention that property has been taken without due process of law.

 It is asserted on behalf of the interveners, Montgomery Ward & Co., Incorporated, and Sears-Roebuck & Co., that the tax is invalid (1) because it is levied for the privilege of operating stores conducting both intrastate and interstate business and the tax is not divisible in accordance with the respective amounts of intrastate and interstate business transacted, (2) because it is levied for the privilege of carrying on Louisiana business, and is partly measured by interstate operations carried on wholly outside the State of Louisiana. The claim does not merit serious consideration. The statute by its express terms applies only "where goods, wares, merchandise or commodities of every description whatsoever are sold or offered for sale at retail."

The order heretofore entered granting an interlocutory injunction is recalled, and

the decree for injunction denied, and the bill of complaint dismissed. Appropriate orders may accordingly be entered.