183 So. 219

**STATE v. GREAT ATLANTIC & PA-
CIFIC TEA CO.***

No. 34785.

May 30, 1938.

Rehearing Denied June 27, 1938.

*Writ of certiorari denied 59 S.Ct. 108, 83 L.Ed. ——.

Hugh M. Wilkinson, of New Orleans, for appellant.

Justin C. Daspit, F. A. Blanche and E. L. Richardson, all of Baton Rouge, for appellee.

FOURNET, Justice.

This is an action by the State of Louisiana to recover from the Great Atlantic & Pacific Tea Company the amount of license taxes due it for the calendar years 1935, 1936 and 1937, under the provisions of Act No. 19 of 1932, as amended by Act No. 51 of 1934, generally known as the Louisiana Chain Store License Tax Act, together with interest and attorney's fees.

Defendant, before filing any pleadings in the matter, deposited in the registry of the court the amount of the taxes involved, less interest and attorney's fees; it then resisted the rule by excepting to the jurisdiction of the court ratione materiae on the ground that the matter of interest and attorney's fees was pending in the District Court of the United States for the Eastern District of Louisiana, and, with reservation of its rights thereunder, filed an answer denying liability to the State for any interest or attorney's fees, setting forth as its reasons therefor substantially: (1) That it instituted injunction proceedings and contested the constitutionality of the Act in the United States District Court for the Eastern District of Louisiana, in good faith, prior to the time the taxes became delinquent under the provisions of the Act, which had the effect of suspending the accrual of interest and attorney's fees during the pendency of the action, otherwise it would be deprived of its property without due process of law and of its right to the equal protection of the laws in violation of the Constitution of the United States, Amendment 14, § 1, U.S.C.A.Const. Amend. 14, § 1, and the Constitution of the State

of Louisiana, Article 1; (2) that the State, through its proper representative, on the hearing in the District Court of the United States for the issuance of the interlocutory injunction, "agreed without prejudice to the ultimate rights of any parties to this suit * * * that it was proper for the matters involved to be held in statu quo until a hearing might be had on the merits," which had the effect of suspending the running of interest and attorney's fees, and the state is accordingly estopped from demanding the same on account of the delay during such action; and (3) in the alternative, that the defendant should be relieved of the claim for interest and attorney's fees to the extent of the amount tendered the State under Act No. 19 of 1932.

On these issues the case was tried and submitted, and the trial judge, for written reasons, gave judgment in favor of the plaintiff for the amount of interest and attorney's fees as prayed for. The defendant has appealed.

The Legislature of the State, under the authority of Section 8, Article 10 of the Constitution of Louisiana for the year 1921, by Act No. 51 of 1934, amended and re-enacted Act No. 19 of 1932. The statute, as amended, became effective January 1, 1935, and the license taxes due thereunder were delinquent on March 1, 1935. It is also provided in the Act that in the event the taxes were delinquent, "such taxes shall bear interest at the rate of two per cent per month, plus ten per cent additional on both principal and interest as attorney's fees· * * *," Section 5, as amended by section 4 of the act of 1934.

The defendant refused to pay the license taxes provided for under the provisions of the Act, as amended, but tendered to the State the amount due by it under the provisions of Act No. 19 of 1932, which was refused. On February 27, 1935, one day before the taxes became delinquent, the defendant instituted proceedings in the District Court of the United States for the Eastern District of Louisiana, In Equity, testing the constitutionality of the statute, and obtained a temporary restraining order, and on June 24, 1935, an interlocutory injunction was issued, prohibiting the State from collecting or attempting to collect either the taxes, interest or attorney's fees due under the statute. The case was tried on the merits on July 24th and the court sustained the validity of the Act in question (Great Atlantic & Pacific Tea Co. v. Grosjean, 16 F.Supp. 499), from which an appeal was taken to the Supreme Court of the United States, which, by its decree of May 17, 1937, affirmed the judgment of the lower court sustaining the validity of the statute. 301 U.S. 412, 57 S.Ct. 772, 81 L. Ed. 1193, 112 A.L.R. 293. Defendant then requested an extension of sixty days to apply for a rehearing, which extension was granted, but the rehearing, in due course, was denied on October 11, 1937. 302 U.S. 772, 58 S.Ct. 3, 82 L.Ed. ——.

On the 13th day of October, 1937, two days after the Supreme Court refused a rehearing in the matter, the State proceeded in a summary manner under the authority of Act No. 14 of the Second Extra Session of 1935 against the defendant to recover the amount due it under the statute

in license taxes, interest and attorney's fees for the years 1935, 1936 and 1937, which, at the time the suit was filed, aggregated $281,536.75. The defendant, before pleading, deposited in the registry of the court the principal amount of taxes sued for, leaving at issue the interest and attorney's fees.

The plea to the jurisdiction is based on the theory of the defendant that the question of its liability for the interest and attorney's fees is pending in the District Court of the United States for the Eastern District of Louisiana which previously assumed and took jurisdiction thereof, and is predicated upon an ex parte order of that court, dated January 4, 1937, in the case of Great Atlantic & Pacific Tea Company v. Grosjean, In Equity. See 16 F.Supp. 499.

A review of that case shows that the Great Atlantic & Pacific Tea Company (defendant here) and others, whose appeal bond had been fixed to include the principal amount of the tax, interest and attorney's fees that would probably accrue during the time the litigation would be in progress, moved to have the amount of the bond reduced on the ground that the act, insofar as the interest and attorney's fees were concerned, was not attacked; the court overruled the motion "but with the express reservation to complainant and intervenors of the right to be heard in this Court as to their liability for penalties and attorney's fees on the taxes accruing under the challenged statute should the validity of such statute be finally upheld." Though the statute in controversy was assailed on several grounds, the constitutionality of the interest and attorney's fees provided for in the Act was never raised or placed in issue; consequently, the matter of interest and attorney's fees is not and can not be pending before the Federal court. But even if that question were pending there, the State court would not thereby be deprived of its jurisdiction for it is now well settled as a general rule that the pendency of a suit in a Federal court is not ground for abatement of a like suit in the state court. See Corpus Juris, under the title "Abatement and Revival, section 122, at page 87. We therefore conclude that the plea to the jurisdiction of the court ratione materiæ is without merit and was properly overruled by the lower court.

Counsel for defendant apparently concedes that his contention urged in the lower court, i. e., Section 5 of the Act, as amended, violates the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and Article 1 of the Constitution of Louisiana, is without merit in that he has failed to point out in what respect the defendant's rights have been so affected in his presentation of the case on appeal, and from a review of the Act we do not see in what manner the rights of defendant might be so affected. Furthermore, the Supreme Court of the United States, in the matter of the Great Atlantic & Pacific Tea Company v. Grosjean, supra, found as a fact that "the statute bears equally upon all who fall into the same class, and this satisfies the guaranty of equal protection." (57 S.Ct. page 776.)

The injunction proceedings in the Federal court had the effect of restraining

and prohibiting the State from enforcing the provisions of the Act during the pendency of the action, but that did not have the effect of suspending the effectiveness of the Act when the final judgment of the court upheld its validity, and the State by its action in not having opposed the issuance of the interlocutory injunction, but instead, having agreed "without prejudice to the ultimate rights of any parties to this suit * * * that it was proper for the matters involved to be held in statu quo until a hearing might be had on the merits," could only have the effect of facilitating and expediting the pending action testing the validity of the Act in controversy, but could not have suspended the accrual of interest and attorney's fees, nor estopped the State from demanding the same.

"An interlocutory or preliminary injunction is a provisional remedy granted before a hearing on the merits, and its sole object is to preserve the subject in controversy in its then existing condition, and without determining any question of right, merely to prevent a further perpetration of wrong or the doing of any act whereby the right in controversy may be materially injured or endangered, until a full and deliberate investigation of the case is afforded to the party. * * *." Corpus Juris, Vol. 32, section 2-A, page 20. See, also, Words and Phrases, First and Second Series, Preliminary Injunction, and cases therein cited.

It therefore follows that the State in agreeing to hold the matters in statu quo until they might be heard on the merits did not waive any of its rights to the interest or attorney's fees provided for in the Act.

Moreover, if the State's agreement would have the effect contended for by the defendant, it would be in direct violation of Section 13 of Article 4 of the Constitution of Louisiana which expressly prohibits the remittance or cancelling of any tax or other obligation due the State. See Succession of Popp, 146 La. 464, 83 So. 765, 26 A.L.R. 1446.

This brings us to the defendant's most serious contention, i. e., that the statutory interest of two per cent per month and the ten per cent attorney's fees provided for in Section 5 of the Act, as amended, are penalties so excessive and unreasonable as to serve as a deterrent to judicial appeal and, therefore, in violation of the due process clause of both the Federal and State Constitutions.

On the other hand, the State takes the position on this issue that the Legislature in exercising its right of taxation may in its discretion provide that delinquent taxes shall bear interest and attorney's fees without doing violence to the due process clause of the Constitution, and that the imposition of interest at the rate of two per cent per month on the amount of the delinquent taxes due and ten per cent attorney's fees is not so excessive or unreasonable as to serve as a deterrent to judicial appeal.

" * * * It is undoubtedly within the power of the legislature to provide that taxes remaining unpaid shall bear interest from the time when they are due and payable, and it is equally constitutional to provide that taxes which have already become delinquent shall bear interest from the time

the delinquency commenced." 26 R.C.L., sec. 343, p. 386. And " * * * it is generally held that one who in good faith contests his liability to the tax and delays payment beyond the allotted time during the pendency of the litigation is liable for the penalty if the decision is adverse, and there is nothing unconstitutional in a statute which imposes a penalty of fifty per cent for nonpayment of taxes of a certain character." 26 R.C.L., sec. 342, p. 385. *"The purpose of imposing penalties for tax delinquencies is to compel all property owners to bear their equal share of the public burden, (and) to pay their taxes promptly * * * *."* Corpus Juris, Vol. 61, sec. 2109, p. 1484. See, also, section 2139, p. 1491, under the caption "Effect of Contesting Liability for Taxes," citing the following cases: Spencer v. Babylon R. Co., 2 Cir., 250 F. 24, 162 C.C.A. 196; Kansas City Southern R. Co. v. Hooper, 174 Ark. 847, 298 S. W. 201, reversed on other grounds 278 U. S. 563, 49 S.Ct. 35, 73 L.Ed. 507; Home Savings Bank v. Stewart, Iowa, 232 N.W. 471; Iowa Nat. Bank v. Stewart, 214 Iowa 1229, 232 N.W. 445; Cedar Rapids, etc., R. Co. v. Carroll County, 41 Iowa 153, 159; Rixey's Ex'rs v. Com., 125 Va. 337, 99 S. E. 573, rehearing denied, 125 Va. 337, 101 S.E. 404. (Italics ours.)

In footnote No. 78 under the same section, the following is quoted from the case of Iowa National Bank v. Stewart, supra (page 454): *"Taxpayers ought not to be encouraged in the nonpayment of taxes by saving them the penalties pending unsuccessful litigation on the plea that the litigation was prosecuted in good faith. One of the purposes of penalties is to discourage evasion and procrastination."* And from the case of Cedar Rapids, etc., R. Co. v. Carroll County, supra: "The fact that the delay incident to the progress of the action has been great, and that the taxpayer has been caused thereby to suffer from the great increase of penalties, constitutes no ground for relief." (Italics ours.)

In this State the Legislature, in its statutes providing for the collection of license or excise taxes, has consistently provided for the payment of interest at the rate of two per cent per month on the amount of the tax from the date of its delinquency, and also for ten per cent attorney's fees, which provisions have been upheld by this Court as far back as 1889. See City of New Orleans v. Pontchartrain R. Co., 41 La.Ann. 519, 7 So. 83; Victoria Lumber Co. v. Rives, 115 La. 996, 40 So. 382, and State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601.

The Supreme Court of the United States, in the case of United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299, had for consideration a claim for additional income tax amounting to the sum of $2,-421.75 filed by the collector of internal revenue against Edward H. Childs, Trustee in Bankruptcy, plus 5 per cent penalty and one per cent interest per month thereon until paid, and the Court stated (page 111):

"At the outset we are confronted with the difference between penalty and interest. A penalty is a means of punishment; *in-*

*terest a means of compensation. Bouvier defines it to be 'a consideration paid for the use of money or forbearance in demanding it when due.'* * * *

*"The imposition of a tax is certainly a function of government and creates an obligation, and the power that creates the obligation can assign the measure of its delinquency,—the detriment of delay in payment.* * * *"*

"The tax in this case is one on income; a burden imposed for the support of the government. Interest is put upon it and so denominated, distinguished from the 5 per cent. as penalty, clearly intended to compensate the delay in payment of the tax—the detriment of its nonpayment, to be continued during the time of its nonpayment—compensation, not punishment." (Italics ours.)

In the case of McFarland v. Hurley, 286 F. 365, decided by the United States Circuit Court of Appeals, Fifth Circuit, in 1923, the court held that the tax debtor was not relieved of the interest of two per cent per month on the amount of the tax and ten per cent attorney's fees provided for by Act No. 31 of 1920 of the Legislature of Louisiana, known as the Severance License Tax Law (page 366), "when the delay had been produced by the settlement of the legal question, raised in good faith by the receivers, [of the tax debtor] of their liability for such tax." (Brackets ours.)

The Supreme Court of the United States, in the case of Texas Company v. Dyer, 179 Miss. 135, 174 So. 80, recently upheld

a penalty of twenty-five per cent levied by a Mississippi statute for failure to pay an excise tax on gasoline or other motor fuel on a certain day named in the Act. In that case, an employee of the tax debtor went to the post office on the day on which the tax was due and payable, on the 15th day of the month, for the purpose of registering the remittance covering the tax imposed by the statute, but finding the registry window closed, he did not mail the remittance until the following day, as a result of which the same reached the motor vehicle commissioner on the 18th of May. The Supreme Court of Mississippi held that the distributor was liable for the penalty fixed in the statute, twenty-five per cent of the amount of the excise tax due. The case was taken to the Supreme Court of the United States, and the appeal was dismissed by per curiam *"for want of a substantial federal question,"* citing in support of its holding the cases of "Missouri Pacific Railway Co. v. Humes, 115 U.S. 512, 523, 6 S.Ct. 110, 29 L.Ed. 463; Western Union Telegraph Co. v. Indiana, 165 U.S. 304, 307, 310, 17 S.Ct. 345, 41 L.Ed. 725; Bankers' Trust Co. v. Blodgett, 260 U.S. 647, 651, 652, 43 S.Ct. 233, 67 L.Ed. 439." See 301 U.S. 670, 57 S.Ct. 945, 81 L.Ed. 1334. (Italics ours.)

In that case the Supreme Court of the State of Mississippi, in the course of its opinion, said (page 82):

*"The Legislature has the right, of course, to impose penalties upon taxpayers for failure to comply with the law, and to fix a date for a final payment. The penalty here imposed is not excessive when con-*

sidered in connection with the purpose of government; the necessity for money to run it, and the desirability of having taxes promptly paid when due. * * *

"The imposition of a penalty for failure to pay taxes upon the day fixed by law is nothing new in this state or in this country. The object of this penalty is not merely a punishment upon the taxpayer, but is in furtherance of enforcing a public duty in the interest of the public welfare. Bennett v. Jones, 107 Miss. 880, 66 So. 277; Gulfport & M. C. T. Co. v. Robertson, 129 Miss. 322, 92 So. 231; Robertson v. Southeastern Express Co., 130 Miss. 305, 94 So. 210; Reed v. State, 155 Miss. 512, 124 So. 497; Brittian et al. v. Robertson, 120 Miss. 684, 83 So. 4; Hamel v. Marlow, 171 Miss. 559, 157 So. 255, 905, 96 A.L.R. 924; C.J. Title, Taxation, Vol. 61, Section 2104, p. 1482." (Italics ours.)

And held:

"This statute fixing the date for the payment of taxes and the imposition of penalties or damages for failure to pay does not violate the due process clause of the Fourteenth Amendment to the United States Constitution, or of the State Constitution, nor does it violate, in any way, any other constitutional provision, so far as we can see." (Italics ours.)

In the case of Bankers' Trust Co. v. Blodgett, supra, cited by the Supreme Court of the United States in its per curiam in the case of Texas Co. v. Dyer, supra, it was held that a statute imposing a penalty computed at a certain per cent per annum for a five-year period, upon es-

tates of decedents for nonpayment of taxes during the lifetime of the owner, "is but a way of fixing a penalty for the delinquency, which it is competent for the state to do." (Page 235.) The opinion is continued with the statement: "We said in Western U. Teleg. Co. v. Indiana, 165 U.S. 304, 310, 17 S.Ct. 345, 41 L.Ed. 725, 727, that the amount of a penalty is a matter for the legislature of a state to determine, in its discretion, and in accordance with the principle, we sustained a penalty of 50 per cent. of the taxes assessed against the telegraph company and unpaid by it." (Italics ours.)

Penalties for failure to make a report or to pay a tax under the franchise tax law of the State of Texas of ten per cent and twenty-five per cent, respectively, were recently assailed in the case of Southern Realty Corporation v. McCallum, D.C., 1 F.Supp. 614, on the ground that the penalties were so excessive they were arbitrary and oppressive, and therefore, in violation of the due process clause of the Constitution of the United States. The District Court of the United States for the Western District of Texas held that (page 619):

"It does not appear that the penalties provided for are so excessive as to deter contest of the statute, thereby coming under the rule announced in Ex parte Young, 209 U.S. [123] 159, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A. (N.S.) 932, 14 Ann.Cas. 764. There is no jail penalty denounced, and the filing and maintenance of the present suit negatives the idea that complainants are overawed by the statute to the extent that

they are deprived of their constitutional right to contest it." (Italics ours.)

On appeal to the Circuit Court of Appeals, Fifth Circuit, 65 F.2d 934, the Court held that (page 937) *"the monetary penalties are not unusually severe * * *."* (Italics ours.)

But counsel for defendant has called our attention to the case of Kansas City Southern Railway Co. v. Hooper, 174 Ark. 847, 298 S.W. 201; Id., 278 U.S. 563, 49 S.Ct. 35, 73 L.Ed. 507. That case is referred to in Corpus Juris, Volume 61, in footnote 77(a), in connection with section 2139, hereinbefore quoted, at page 1491, as follows:

"One who obtains an injunction against the collection of taxes on the day before they become due, which injunction is subsequently dissolved and the tax held valid, is liable for the statutory penalty. 'The tax being held to be valid and legally assessed, it necessarily follows that the injunction against its collection was wrongfully issued, and, being so, upon its dissolution and the dismissal of the suit, nothing more can be said to have been adjudicated than that the railroad companies were liable to the payment of the valid tax, and, not having paid it within the time required by law, relying upon the claim of its illegality, they are liable to the payment of the tax and penalties, as part thereof, being delinquent taxpayers.' * * * *(rev on other grounds 278 U.S. 563, 49 S. Ct. 35, 73 L.Ed. 507)."* (Italics ours.)

Reference to the above citation shows that the Supreme Court of the United

States reversed the lower court by per curiam on the authority of (1) Montana Nat. Bank v. Yellowstone County, 276 U.S. 499, 48 S.Ct. 331, 72 L.Ed. 673; (2) Oklahoma Operating Co. v. Love, 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596; (3) St. Louis, I. M. & S. R. Co. v. Williams, 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139; (4) Wadley Southern R. Co. v. Georgia, 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405, P.U.R. 1915A, 106; (5) Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.(N.S.) 932, 14 Ann.Cas. 764.

Being without the benefit of an opinion from the Court, we resorted to a review of the cases cited in order to determine on what ground the case was reversed, which revealed that, with the exception of the first cited case, in which the sole question was whether the statute in controversy was a violation of the restriction upon the State's power in taxing shares of national bank associations at a greater or different rate than is assessed upon other capital in the hands of individuals or state banks, all the cases deal with administrative orders fixing rates of public utilities, the legality of which is not apparent on the face but depends upon a showing of extrinsic facts, and therefore are not applicable to the issue raised here. This is well illustrated in the last cited case, Ex parte Young, supra, 209 U.S. 123, 28 S.Ct. 441, at page 449, 52 L.Ed., at page 724, from which we quote the following:

"In the case * * * of the establishment of certain rates without any hearing, the validity of such rates necessarily depends upon whether they are high enough

to permit at least some return upon the investment (how much it is not now necessary to state), and an inquiry as to that fact is a proper subject of judicial investigation. If it turns out that the rates are too low for that purpose, then they are illegal. Now, to impose upon a party interested the burden of obtaining a judicial decision of such a question (no prior hearing having ever been given) only upon the condition that, if unsuccessful, he must suffer imprisonment and pay fines, as provided in these acts, is, in effect, to close up all approaches to the courts, and thus prevent any hearing upon the question whether the rates as provided by the acts are not too low, and therefore invalid. *The distinction is obvious between a case where the validity of the act depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character, and the ordinary case of a statute upon a subject requiring no such investigation, and over which the jurisdiction of the legislature is complete in any event."* (Italics ours.)

Public utilities are subject to regulation, and consequently, under the due process clause of both the Federal and State Constitutions, such regulation must allow the owner thereof a fair return on his investment. It necessarily follows that if the administrative order regulating and fixing the rate is arbitrary and unreasonable so as to deprive the owner of a fair return on his investment, he is deprived of his property without due process of law. In order to inquire into the fairness and rea-

sonableness of an order one must resort to the courts and make the necessary proof to establish that fact.

■  But in the case at bar, we are not confronted with such a situation. We are dealing with an act of the Legislature over which its jurisdiction is complete. The Legislature had the authority under its broad discretionary powers of taxation to impose upon the delinquent tax debtor an interest charge of two per cent per month until paid and ten per cent additional if an attorney were employed to assist in the collection of the tax. We think that the two per cent charge, whether considered to be interest as denominated, so as to compensate for the delay in the payment of the tax, or merely a penalty, is immaterial, for in either case such a charge is necessary "in furtherance of enforcing a public duty in the interest of public welfare," and "when considered in connection with the purpose of government; the necessity for money to run it, and the desirability of having taxes promptly paid when due," are neither excessive nor unreasonable, and therefore not in violation of the due process clause of the Constitution of the United States or the Constitution of the State of Louisiana. To hold otherwise would discourage the prompt payment of taxes and encourage litigation to the detriment of the fisc of the State. The delinquent tax debtor would thereby receive a decided advantage over the prompt taxpayer. Besides, to deprive the State by injunction proceedings of the use of the funds to be derived from a tax while the validity thereof is being tested (as in the case at bar

for a period of more than two and a half years), if intended for revenue purposes, might seriously impair the functions of the government, or if intended for the purpose of regulation, might defeat the very mischief intended to be corrected.

But counsel for defendant now urges that at the time Act No. 19 of 1932, as amended, became effective the only remedial legislation in Louisiana to recover taxes erroneously paid was Act No. 16 of the Second Extra Session of 1934, which he contends "was recognized to be of doubtful validity." He further contends that the Legislature, in adopting Act No. 23 of its Second Extra Session of 1935, recognized that the prior statute (Act No. 16 of the Second Extra Session of 1934), on its face, (1) "* * * was neither plain nor adequate in the remedy it attempted to afford," and (2) "that the attempt of the Legislature to furnish such a remedy was indicative of the necessity therefor in just such an emergency as was presented by the Chain Store Tax Act of 1934," and consequently, at the time defendant filed its suit in the Federal court, it was without an adequate remedy to recover the tax if it had paid the same under protest and the Act had subsequently been declared unconstitutional instead of constitutional, which in effect would be depriving it of its property without due process of law. This issue was not raised in the lower court and is now being urged on appeal for the first time.

It is elementary that "he who urges the unconstitutionality of a law must specially plead its unconstitutionality, and show specifically wherein it is unconstitutional" (City of Shreveport v. Pedro, 170 La. 351, 127 So. 865; see, also, Ward v. Leche, Governor, 189 La. 113, 179 So. 52), and that issues not raised by the pleadings are not properly before the court and can not be considered on appeal. Montgomery v. Barrow, 19 La.Ann. 169; Succession of Rhodes, 39 La.Ann. 473, 2 So. 36; State ex rel. Neyland v. Read, 50 La.Ann. 445, 23 So. 715; Neith Lodge v. Vordenbaumen, 111 La. 213, 35 So. 524; Cunningham v. Penn Bridge Co., 131 La. 196, 59 So. 119; Godchaux Sugars, Inc., v. Boudreaux & Bros., 153 La. 685, 96 So. 532; Clarke Co. v. Petivan, 161 La. 1095, 109 So. 913; Woodward, Wight & Co. v. National Box Co., 168 La. 701, 702, 123 So. 296; Succession of Price, 172 La. 606, 134 So. 907.

Moreover, we think that this issue was settled by our conclusion that the Legislature had the right, under its broad discretionary taxing powers, to impose a charge upon the tax debtor for interest and attorney's fees and that the interest levied by the statute in controversy—two per cent per month on the amount of the tax due—is not unreasonable nor so excessive as to intimidate the tax debtor from contesting the validity of the Act.

Defendant's alternative plea was neither argued in brief nor orally, and we will therefore not give it further consideration other than to say that it is without merit. See State v. Whitehead Motor Company, Inc., 180 La. 221, 156 So. 228.

For the reasons assigned, the judgment of the lower court is affirmed.

O'NIELL, C. J., does not take part.

LAND, J., absent.

ODOM, J., dissents from the refusal to grant a rehearing.